**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MICHAEL FAZIO

      Plaintiff,

          v.                         CIVIL NO.: 22-1186 (MEL)

JAMES RIVER INSURANCE COMPANY,
et al.,

      Defendants.

**OPINION & ORDER**

## I.  PROCEDURAL & FACTUAL BACKGROUND

On September 29, 2020, Plaintiff Mr. Michael Fazio ("Plaintiff" or "Mr. Fazio") filed a second amended complaint against James River Insurance Company ("James River" or "Defendant") and four other co-defendants alleging that while being transported in a vehicle which Plaintiff had hired through the ride-sharing application Uber, the vehicle in which Plaintiff was a passenger was struck from behind while stopped at a traffic light ("The 2020 lawsuit"). ECF No. 71 at 3–6 in Case No. 20-1074. As a result of this accident, Plaintiff alleges that he suffered "bodily injuries, pain, suffering, mental anguish and other damages" entitling him to compensation in excess of one million dollars ($1,000,000). ECF No. 71 at 6 in Case No. 20-1074. In the 2020 lawsuit, Plaintiff further contends that James River breached the provisions of the uninsured motorist coverage as part of a policy issued to Uber "for the benefit of Uber drivers and passengers" by denying coverage and by failing to compensate Plaintiff for his injuries. ECF No. 71 at 5, 7 in Case No. 20-1074. In the lawsuit filed in 2020, Plaintiff also brought four additional causes of action against James River alone: breach of contract,

contractual and tortious breach of the implied covenant of good faith and fair dealing, bad faith, and unfair claim adjustment practices. ECF No. 71 at 7–12 in Case No. 20-1074.

On June 22, 2022, Plaintiff filed an amended complaint in a second lawsuit against James River alone, alleging violations of Article II, Section 8 of the Constitution of the Commonwealth of Puerto Rico; violations of the Puerto Rico Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141–3149; and violations of the general tort provisions of Puerto Rico Civil Code Articles 1536 and 1538, 21 L.P.R.A. §§ 10801 and 10803 ("the 2022 lawsuit"). ECF No. 26 at 1 in Case No. 22-1186. In the 2022 lawsuit, Plaintiff alleges that James River defamed him in the course of litigating the 2020 lawsuit. ECF No. 26 at 1 in Case No. 22-1186.

Now pending before the court is a motion to dismiss filed by James River seeking the dismissal of Plaintiff's amended complaint in the 2022 lawsuit. ECF No. 33 in Case No. 22-1186. James River moves to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF No. 30 at 6 in Case No. 22-1186. James River also moves to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiff having failed to allege facts which establish that the amount in controversy exceeds $75,000. ECF No. 30 at 6 in Case No. 22-1186. James River also requests that the court sanction the Plaintiff under Rule 44.1 of the Puerto Rico Rules of Civil Procedure for the filing of a complaint which is "frivolous and without merit[.]" ECF No. 30 at 31 in Case No. 22-1186. Plaintiff filed a response in opposition to the motion to dismiss. ECF No. 33 in Case No. 22-1186.

II.   **FACTUAL ALLEGATIONS**

### A.  First Cause of Action: James River's July 13, 2021 Accusation of Fraud

In the amended complaint of the 2022 lawsuit, Plaintiff asserts three causes of action. The first two causes of action regard a letter sent by James River to the Puerto Rico Insurance Commissioner on two separate occasions. Plaintiff recounts that on June 28, 2021 he filed a "Form for Prior Notice for Bringing Civil Action Under Section 27.164 of the Insurance Code of Puerto Rico" with the Office of the Commissioner of Insurance of Puerto Rico in order to "perfect his right to pursue civil remedies against James River" in the original 2020 case. ECF Nos. 26 at 6; 30-1 in Case No. 22-1186. A little more than two weeks later, on July 13, 2021 James River sent a letter to the Commissioner of Insurance of Puerto Rico in response to Plaintiff's prior notice which was cited to and incorporated into the Plaintiff's amended complaint in the present case. ECF Nos. 26 at 6; 30-2 in Case No. 22-1186. In the letter, James River wrote that it "has a well-founded reason to believe that the Claimant [Plaintiff] violated Art. 27.180 of the Insurance Code of Puerto Rico by requesting compensation for damages that were pre-existing or degenerative or caused as a result of the treatment of the other conditions suffered by the Claimant prior to the motor vehicle accident." ECF Nos. 26 at 7; 30-2 at 1–2, 7–8 in in Case No. 22-1186. In the same letter, Plaintiff also notes that James River stated that it was "looking into the appropriateness of requesting an investigation against [Plaintiff], pursuant to Art. 27.200 of the Insurance Code." ECF Nos. 26 at 9; 30-2 at 6, 12 in Case No. 22-1186. Plaintiff alleges that because insurance fraud is a felony under Art. 27.180 of the Puerto Rico Insurance Code, James River had "maliciously and negligently" accused Plaintiff of fraud which constituted defamatory libel "for the purpose of wilfully [sic] injuring and damaging" Plaintiff. ECF No. 26 at 6–10 in Case No. 22-1186.

**B.  Second Cause of Action: James River's August 27, 2021 Accusation of Fraud**

Plaintiff's second cause of action for defamatory libel arises from Plaintiff's allegation that on August 27, 2021 James River "falsely, maliciously and negligently republished its letter dated July 13, 2021" which contains allegedly libelous and defamatory accusations of insurance fraud, when James River included the letter as an attachment to email and written correspondence with the Investigations Division of the Office of the Insurance Commissioner of Puerto Rico. ECF No. 30 at 10 in Case No. 22-1186; ECF No. 215-9 at 1–3, 6–7 in Case No. 20-1074. The correspondence containing the alleged second republication was cited and incorporated into Plaintiff's amended complaint. ECF No. 215-9 at 1–3, 6–7 in Case No. 20-1074.

**C.  Third Cause of Action: James River's Emailed Accusation of Extortion**

Finally, in Plaintiff's third cause of action, Plaintiff alleges that on November 3, 2021, Plaintiff sent to James River a settlement demand via email. ECF No. 26 at 10 in Case No. 22-1186. In an emailed response, which was cited and incorporated into the amended complaint in the present case, Plaintiff alleges that James River replied that "this grossly exaggerated settlement demand shows nothing from your client's part to want to settle this action, and it seems to us [James River] a transparent attempt [to] try to extort the policy limits from our client for alleged damages that are not justified and that your client will not be able to establish at trial . . . ." ECF No. 26 at 10–11 in Case No. 22-1186; ECF No. 201-2 in Case No. 20-1074. Plaintiff alleges that by using the word "extort" James River committed defamatory libel by accusing Plaintiff of having committed felony extortion as defined by the Penal Code of Puerto Rico 33 L.P.R.A. § 4828. ECF No. 26 at 10–11 in Case No. 22-1186.

III.   **ANALYSIS**

### A. Legal Framework of the Substantive Law

Under Puerto Rico Law, protection against defamation derives from Article II, Section 8 of the Constitution of the Commonwealth of Puerto Rico, and "parallel actions for defamation under the Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141–3149 (1990)," and Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5311.[1] Gierbolini Rosa v. Banco Popular de Puerto Rico, 930 F. Supp. 712, 717 (D.P.R. 1996), aff'd, 121 F.3d 695 (1st Cir. 1997); Porto y Siurano v. Bentley P.R., Inc., 132 P.R. Dec. 331, 343 (1992). In the Libel and Slander Act of 1902, Puerto Rico "codified the basic features of the Anglo–Saxon common law governing claims of defamation[.]" Gierbolini Rosa, 930 F. Supp. at 717.

"Claims for defamation encompass both libel and slander." Díaz v. Gazmey Santiago, 2020 WL 1042041, at *2 (D.P.R. Mar. 3, 2020). "Libel is the malicious defamation of a person made public by writing, printing, . . . or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him . . . ." P.R. Laws Ann. tit. 32 § 3142. Slander, in contrast, is a "false and unprivileged publication other than libel, which imputes to any person the commission of a crime or tends directly to injure him in respect to his office, profession, trade or business, or which by natural consequences causes actual damages." 32 L.P.R.A. § 3143. For a claim of libel to prosper under Puerto Rico law, "a plaintiff must . . . prove: (1) that the information is false; (2) that he or she suffered real damages; and (3) that in the case of a private figure, the publication was

---

[1] In Gierbolini Rosa, the court references Section 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. However, Puerto Rico's general tort statute was replaced in November 2020, and is now denominated as Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5311. Because the allegations in the case pertaining to the 2022 lawsuit occurred after November 2020, the new Puerto Rico Civil Code is applicable here.

negligently made." <u>González Pérez v. Gómez Águila</u>, 312 F.Supp.2d 161, 173 (D.P.R. 2004);

<u>Comité Fiestas De La Calle San Sebastián, Inc. v. Cruz</u>, 207 F. Supp. 3d 129, 147 (D.P.R. 2016);

<u>Torres Silva v. El Mundo, Inc.</u>, 106 P.R. Dec. 415, 599 (1977).

### B. Rule 12(b)(6) Motion Standard

James River moves to dismiss all three of Plaintiff's causes of action under Rule

12(b)(6). A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a

motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the

complaint and "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable

inferences in the plaintiff's favor.'" <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 190 (1st Cir. 1996)

(quoting <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996)). In order to survive a motion to

dismiss, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory." <u>Gooley v.

Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in

plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions,

periphrastic circumlocutions, and the like." <u>Aulson</u>, 83 F.3d at 3. Dismissal under Rule 12(b)(6)

is appropriate only if the facts alleged, taken as true, do not warrant recovery. <u>Id</u>.

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a

plausible entitlement to relief." <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir.

2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007)). "[T]o avoid dismissal,

the plaintiff must provide the grounds upon which his claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'" <u>Torres v. Bella Vista Hosp.,

Inc.</u>, 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555, 570).

1. **Claim Splitting**

James River moves to dismiss the entire amended complaint in the 2022 lawsuit, including all three causes of action, on the basis that Plaintiff's filing of these claims for defamation violates the prohibition on claim splitting. Res judicata is the doctrine which "generally binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting." Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 42 (1st Cir. 1985). The doctrine is meant to protect "a party from the hardship of being forced to defend successive lawsuits arising out of the same matter." Marcano Arroyo v. K-mart, Inc., 81 F. Supp. 2d 301 (D.P.R. 1999). In support of its argument, James River notes that in the original 2020 lawsuit, Plaintiff filed an informative motion on November 4, 2021 regarding "Additional Bad Faith by James River" wherein Plaintiff essentially set forth the same facts which now constitute the basis for his defamation claims in the 2022 lawsuit. ECF No. 30 at 21 in Case No. 22-1186 (citing ECF No. 201 in Case No. 20-1074). James River argues that this demonstrates that Plaintiff's 2022 lawsuit is not a new claim, but really only evidence to support his bad faith claims in the original 2020 lawsuit. ECF No. 30 at 21 in Case No. 22-1186.

However, the doctrine of res judicata does not apply here for two reasons. First, it does not apply because no issues raised in the amended complaint in the 2022 lawsuit had been adjudicated in the original 2020 case. The court has issued no rulings on Plaintiff's claim of bad faith or regarding James River's communications from July 13, 2021, August 27, 2021, and November 3, 2021. Therefore, there has been no applicable prior adjudication in the 2020 lawsuit which would give rise to res judicata.

Secondly, Plaintiff's claims raised in the 2022 lawsuit could not have been raised in the original 2020 lawsuit. Two orders were filed in the original 2020 lawsuit precluding Plaintiff

from amending the complaint on February 12, 2021 and February 17, 2021. ECF Nos. 92; 97 in

Case No. 20-1074. For that reason, when Plaintiff filed the "Motion of Additional Bad Faith" the

court merely issued an order noting the motion because on two prior occasions the court had

made clear that it would not entertain any further amendments to the complaint. ECF Nos. 92;

97, 202 in Case No. 20-1074. However, the events which give rise to the instant defamation

claims in the 2022 lawsuit occurred on July 13, 2021, August 27, 2021, and November 3, 2021—

several months after the court had precluded amending the complaint in the 2020 lawsuit.

Therefore, with regard to those claims, Plaintiff could not have litigated or requested

adjudication of those claims in the previous 2020 case, because the conduct giving rise to the

claims for defamation arose after the deadline to amend the complaint in the 2020 lawsuit had

expired. Thereafter, Plaintiff filed the complaint in the instant case, stating the three

aforementioned causes of action for defamation which were not raised as a cause of action in the

original 2020 lawsuit or added to the amended complaint in the 2020 case.[2] Therefore, James

River's request to dismiss the instant amended complaint in the 2022 lawsuit due to claim

splitting is denied.

### 2. James River's Motion to Dismiss Plaintiff's First and Second Causes of Action for the Letter Sent to the Commissioner of Insurance

James River also moves to dismiss Plaintiff's first two causes of action on the basis that

the letter sent to the Puerto Rico Commissioner of Insurance is not actionable for defamation

because it is subject to a privilege under the Puerto Rico Libel and Slander Act. ECF No. 30 at

9–13 in Case No. 22-1186. The codification of the Libel and Slander Act of 1902 introduced the

common law qualified privilege "for communications made under an official duty or in the

---

[2] Of course, this litigation of both the bad faith claims and the defamation claims could occur simultaneously should the court determine that consolidation is appropriate.

course of a judicial proceeding." Instituto de Educación Universal, Inc. v. Great Lakes Higher Educ. Corp., 2001 WL 1636690, at *3 (D.P.R. Aug. 30, 2001), aff'd sub nom. Instituto De Educación Universal Corp. v. Great Lakes Higher Educ. Guar. Corp., 126 F. App'x 1 (1st Cir. 2005). Specifically, 32 L.P.R.A. § 3144 provides that

> "A publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made: . . . In a fair and true report of a judicial, legislative, official or other proceeding, or of anything said in the course thereof."

32 L.P.R.A. § 3144. Under Puerto Rico law, "[a] privileged communication is one which, except for the occasion and circumstances under which it was made, would be defamatory and actionable." Gimenez Alvarez v. Silen Maldonado, 131 P.R. Dec. 91, 99 (1992). The Puerto Rico Supreme Court has indicated that under Puerto Rico law the privilege protecting a publication or communication made in any legislative or judicial proceeding or in any other proceeding authorized by law is a conditional privilege and not an absolute privilege. Caraballo v. P.R. Illustrado, 70 D.P.R. 283, 288, 1949 PR Sup. LEXIS 364 (P.R. 1949); Meléndez Vega v. El Vocero de PR, 189 D.P.R. 123, 158 n. 28 (P.R. 2013). While an absolute privilege operates as an immunity from suit, a "qualified common law privilege under Puerto Rico law limits the extent to which a plaintiff can establish an actionable claim for libel" under certain "circumstances in which a statement is made." Instituto de Educacion Universal, Inc., 2001 WL 1636690, at *3–4. The privilege is "conditional" because "the person availing himself of it must use it in a lawful manner and for a proper purpose." Caraballo, 70 D.P.R at 291. As such, the conditional privilege protects "on appropriate occasion, of an inadvertent untruth. It is not to protect a conscious falsehood or, as is sometimes said, behavior which is not in good faith." Bos. Mut. Life Ins. Co. v. Varone, 303 F.2d 155, 160 (1st Cir. 1962). Therefore, "a defendant cannot claim the privilege

if he did not believe his statement to be true, or had no reason to believe it true." <u>Id</u>. Furthermore, "[w]hen a defendant has established that its publication was subject to a qualified or conditional privilege, the burden shifts to the plaintiff" to prove "malice" meaning that the Plaintiff shows that the defendant acted with an "improper motive" or engaged in an act "which goes beyond, or lies outside the purpose of the privilege." <u>Id</u>. at 158–59.

In this case, James River's two communications to the Puerto Rico Insurance Commissioner appear to qualify for the conditional privilege under 32 L.P.R.A. § 3144 as a communication made in the course of a proceeding authorized by law. Under the Puerto Rico Insurance Code, 26 L.P.R.A. § 2716d(3) it is required "[a]s a condition precedent to bringing an action under this section, [that] the affected party shall give written notice of such violation to the Commissioner and the insurer" in "in order to perfect the right to pursue the civil remedy authorized by this section." 26 L.P.R.A. § 2716d(3), (3)(a)(v). The notice by the insured "shall be on an official form to be provided by the Commissioner" and the notice is required to contain information such as the article or section of the law which the insurer allegedly violated, the facts giving rise to the violation, the name of the person or entity involved in the alleged violation, and the specific policy language related to the violation. 26 L.P.R.A. § 2716d(3)(a)(i)–(v). Therefore, the notice process before the Puerto Rico Insurance Commissioner qualifies as a proceeding authorized by law. Based on the allegations of the amended complaint and the letters explicitly alluded to in the amended complaint, James River sent the two letters containing the allegedly defamatory statements in relation to Plaintiff's required notice filed with the Insurance Commissioner under 26 L.P.R.A. § 2716(d)(3).ECF No. 26 at 6, 10 in Case No. 22-1186; ECF Nos. 186-13 at 11–12; 215-9 in Case No. 20-1074. Thus, the court concludes that James River's two letters to the Insurance Commissioner were communication made in the course of a

proceeding authorized by law. The only remaining question is whether James River's communications were *protected* by the conditional privilege under 32 L.P.R.A. § 3144, or whether James River's statements were made in bad faith and with malice to defeat the conditional privilege. Plaintiff bears the burden on this point.

Here, at the motion to dismiss stage, Plaintiff has challenged James River's assertion of privilege both on lack of good faith and malice. In the letter to the Insurance Commissioner, James River communicated that it had "well-founded reason to believe that the [Plaintiff] violated Art. 27.180 of the Insurance Code of Puerto Rico by requesting compensation for damages that were pre-existing or degenerative or caused as a result of the treatment of the other conditions suffered by the [Plaintiff] prior to the motor vehicle accident." ECF No. 30-2 at 1–2, 7–8 in in Case No. 22-1186. Plaintiff alleges that James River did not believe and had no reason to believe the truth of that accusation and made it with the "improper purpose of intimidating and bullying Mr. Fazio into settling his claim for an unreasonable sum." ECF Nos. 26 at 8; 33 at 8–10; ECF No. 33 at 9 in Case No. 22-1186. On this point, James River argues that Plaintiff has not set forth facts in the amended complaint to allow the court to conclude that James River's statement against Plaintiff was false.

Under Article 27.180 any person "shall be deemed to have committed fraud for the purposes of this chapter" when they, for example, intentionally and knowingly "[p]resent a false or fraudulent claim, or alter or omit information or any evidence in support thereof, for the payment of a loss, in reference to an insurance policy[.]" 26 L.P.R.A. § 2720(1). Certainly a plain reading of James River's statement indicates that it believed that it was *a fact* that Plaintiff had violated the cited statute—and a well-founded belief in that fact—otherwise, it would have been pointless, indeed deceptive, for James River to communicate facts to the Insurance

Commissioner which they did not believe or did not have reason to believe to be true. Although James River may have been expressing "an opinion or belief," the only reasonable conclusion is that the opinion or belief which James River communicated to the Insurance Commissioner was that Plaintiff had *in fact* violated Art. 27.180 of the Insurance Code.

Whether or not James River really had a well-founded reason to believe that Plaintiff had violated the aforementioned is a question of both law and fact that is capable of being proved as true or false. Either James River really had "a well-founded reason to believe" that Plaintiff had violated the provisions of Art. 27.180 of the Insurance Code or it did not. The only way to determine the truth of James River's statement is to examine the evidence upon which James River based its "well-founded reason to believe" that Plaintiff had violated the insurance code. If James River really had no evidence or reason to believe that Plaintiff was committing fraud, James River may have acted with malice and bad faith sufficient to defeat the applicable conditional privilege under Puerto Rico law. Bos. Mut. Life Ins. Co., 303 F.2d at 160 ("[A] defendant cannot claim the privilege if he did not believe his statement to be true, or had no reason to believe it true.").

James River nevertheless maintains that its statement could not be false because "when James River sent the Response Letter, the allegations of the Complaint, Amended Complaint, and Second Amended Complaint in the [original 2020 case] still averred, as they still do today, that the accident was the legal and proximate cause of [Plaintiff's] supposed bilateral carpal tunnel syndrome." ECF No. 30 at 17–18 in Case No. 22-1186. The amended complaint of the 2022 lawsuit, however, alleges that James River had no reason to believe that Plaintiff was committing fraud because James River had received and was aware of medical evidence and a medical opinion which shows that Plaintiff was only seeking to recover for the aggravation of

pre-existing carpal tunnel syndrome and not attempting to recover compensation for damages that were pre-existing or degenerative. ECF No. 26 at 8 in Case No. 22-1186.[3]

The court need not and will not weigh the above evidence at the motion to dismiss stage to determine whether James River had a reason to believe its allegations made to the Puerto Rico Insurance Commissioner. Instead, at this juncture Plaintiff has averred factual allegations to raise his first and second causes of action for defamation above the speculative level. Those facts show that there is a controversy regarding whether James River's statements to the Puerto Rico Insurance Commissioner is entitled to conditional privilege or whether they were made with malice, bad faith, and were false. On that basis, James River's motion to dismiss Plaintiff's first two causes of action are therefore denied, and Plaintiff must bear the burden of producing evidence to show that James River did not believe its two statements on July 13, 2021 and August 27, 2021 to the Insurance Commissioner to be true or that James River lacked any reason to believe its statements to be true.

### 3. James River's Motion to Dismiss Plaintiff's Third Cause of Action for the Email Sent During the Course of Settlement Negotiations

James River also seeks to dismiss Plaintiff's third cause of action for defamation regarding James River's use of the word "extort" in a settlement email with Plaintiff, arguing that James River's statement was an opinion, hyperbolic, and that "no reasonable person could interpret it as a serious accusation that Plaintiff committed the crime of extortion, as codified by

---

[3] Defendant nevertheless argues that Plaintiff should have moved to amend the pleadings under Rule 15(b) "to conform them to the evidence." ECF No. 26-1 at 5 in Case No. 22-1186. However, the provision of Rule 15(b) which Defendant cites becomes operative to allow amendments to the complaint only *"During and After Trial."* Fed. R. Civ. P. 15(b) ("If, *at trial*, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.") (emphasis added). As discussed further below, on two separate occasions during the original 2020 case and before the events in question here, the court made clear that it would not entertain any further amendments to the complaint. ECF Nos. 92; 97 in Case No. 20-1074.

applicable law." ECF No. 30 at 19–20 in Case No. 22-1186. James River's argument is a reasonable one. In Greenbelt Co-op Pub. Ass'n v. Bresler, the United States Supreme Court addressed a similar issue when confronted with a suit for libel against a newspaper publisher. Greenbelt Co-op Pub. Ass'n v. Bresler, 398 U.S. 6, 7 (1970). The newspaper was reporting on negotiations between Plaintiff and the Greenbelt City Council regarding certain zoning ordinances, wherein certain individuals characterized the Plaintiff's negotiating position as "blackmail" and the newspaper published that characterization several times within a news story. Bresler, 398 U.S. at 7–8. Plaintiff brought suit for libel, arguing that the negotiators who had used the word blackmail and the newspaper publisher who subsequently reported the word, were accusing him "with the crime of blackmail" and because plaintiff had not in fact committed the crime of blackmail, the publisher had committed libel. Id. at 13. The Supreme Court held that the use of the word "blackmail" in this context was neither slander when spoken nor libel when published in writing. Id. The Court reasoned,

> It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was [plaintiff's] public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [plaintiff] with the commission of a criminal offense. On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable. Indeed, the record is completely devoid of evidence that anyone in the city of Greenbelt or anywhere else thought [plaintiff] had been charged with a crime.

Id. at 14.

Likewise, in citing the U.S. Supreme Court, the Supreme Court of Puerto Rico has recognized the rule of rhetorical hyperbole, which holds that an allegedly defamatory statement is not actionable if the statement was used in a figurative, flexible sense, and not necessarily for

14

its literal meaning. Garib Bazain v. Clavell, 135 D.P.R. 475, 486 (P.R. 1994). In so applying

such a rule, the Puerto Rico Supreme Court examines the context in which the statements were

made and has held that certain alleged defamatory statements are not actionable because they

contain such a degree of satire and hyperbole that no reader would interpret them as an assertion

of fact. Id. at 497.

The reasoning in both Bresler and Garib Bazain apply here. Plaintiff alleges in the

amended complaint that James River's use of the word "extort" in the email exchange of

November 3, 2021 amounted to James River accusing Plaintiff of the crime of extortion under

Puerto Rico Penal Code Section 200, 33 L.P.R.A. § 4828. ECF No. 26 at 11 in Case No. 22-

1186. Puerto Rico Penal Code Section 200, which is entitled "Extortion" provides that

> Any person who, by means of violence or intimidation, or under the pretext of
> rights as a public officer or employee, compels another person to deliver property
> or to perform, tolerate or omit acts which occur or are executed after an act of
> violence, intimidation or under pretext of authority shall incur a fourth degree
> felony.

33 L.P.R.A. § 4828. Even accepting Plaintiff's allegations with regards to the content of James

River's email as true and using the definition of extortion which Plaintiff cites in the amended

complaint, in the context of James River's email as a whole, it is evident that James River was

not literally accusing Plaintiff of the crime of extortion. Instead, James River was employing

rhetorical hyperbole and a vigorous epithet with regard to Plaintiff's negotiation strategy.

James River's full statement sent via email on November 3, 2021 was a response to a

settlement demand it received from Plaintiff's counsel indicating that "we would be willing to

recommend to [Plaintiff] that he accept James River's $1,000,000 limit of insurance in full and

final settlement of his claims, with a full release of all the Defendants." ECF No. 201-2 at 2 in

Case 20-1074. Nothing about Plaintiff's settlement demand in the course of litigation was unlawful. In response to Plaintiff's demand, James River asserts

> "*this grossly exaggerated settlement demand* shows nothing from your client's part *to want to settle this action*, and it seems to us a transparent attempt to try to *extort the policy limits from our client* for alleged damages that are not justified and that your client will not be able to establish *at trail* [sic][.]"

ECF No. 201-2 at 1 in Case 20-1074 (emphasis added). Plaintiff is not a public officer or employee, nor does the email make any mention of violence. Nor can the statute which Plaintiff cites be reasonably construed to mean that James River's response was accusing Plaintiff of using "intimidation" to extort James River. Black's Law Dictionary defines "intimidation" as "[*u*]*nlawful* coercion; extortion." INTIMIDATION, Black's Law Dictionary (11th ed. 2019). James River did not accuse Plaintiff of any *unlawful* means of recovering the policy. James River only referred to exaggerated settlement demands and proceeding to trial. Nothing about settlement or proceeding to trial in this case indicates an unlawful act which would amount to "intimidation" under Puerto Rico's extortion statute. James River's email communication contained no other allegations of unlawful behavior on the part of Plaintiff which would constitute intimidation. Accordingly, James River's email, read as a whole, leads to the inescapable conclusion that James River used the word "extort" in response to Plaintiff's *lawful* settlement demand, and no reasonable reader could conclude that it was a literal accusation of criminal extortion. As such, James River's use of the word extort was obviously figurative. Like in Bresler, a reasonable reader could only conclude that James River's statement was "rhetorical hyperbole" and a "vigorous epithet" used only to indicate that James River considered Plaintiff's "negotiating position extremely unreasonable." Bresler, 398 U.S. at 14.

Additionally, in the email chain of November 3, 2021, unlike the accusations in the letters sent to the Commissioner of Insurance, James River made no specific mention of any

criminal statute which would indicate James River was literally accusing Plaintiff of having committed the crime of extortion under Puerto Rico law. Also like in Bresler, Plaintiff has made no allegations in the amended complaint that—aside from the Plaintiff's lawyers—any of the recipients of the email chain thought that Plaintiff had been charged or was going to be charged for the crime of extortion as a result of James River's use of the word "extort." In sum, because James River's use of the word "extort," taken by any reasonable reader in the context of the statement as a whole, was clearly rhetorical hyperbole and used in a figurative sense, Plaintiff has failed to adequately allege a cause of action for defamation arising from James River's email sent on November 3, 2022. Plaintiff's third cause of action is accordingly dismissed with prejudice.[4]

### C.  James River's Rule 12(b)(1) Motion for Lack of Subject Matter Jurisdiction

Finally James River moves to dismiss the amended complaint on the premise that Plaintiff's defamation claims do not meet the $75,000 threshold amount in controversy for federal subject matter jurisdiction. ECF No. 30 at 26–30 in Case No. 22-1186. A defendant may move to dismiss an action pursuant to Rule 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Droz Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217, 217 (D.P.R. 2003) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). To determine if the burden has been met, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v.

---

[4] Nothing in this conclusion, however, necessarily implies that James River's use of the word "extort" in the context of settlement negotiations was prudent or appropriate in the course of professional communications between attorneys.

United States, 566 F.3d 248, 251 (1st Cir. 2009). The court, however, is not bound by the allegations in the pleadings and is permitted to consider materials outside the pleadings to determine jurisdiction on a Rule 12(b)(1) motion. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

Plaintiff's amended complaint asserts subject matter jurisdiction on the basis of diversity under 28 U.S.C. § 1332 and Article III, Section II of the United States Constitution. ECF No. 26 at 2 in Case No. 22-1186. In order to establish federal diversity jurisdiction, 28 U.S.C. § 1332 requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). To determine whether the amount in controversy exceeds $75,000, "the amount specified by the plaintiff controls, as long as that amount is asserted in good faith." Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001). A federal court may only dismiss an action for insufficiency of the amount in controversy if "from the face of the pleadings, it is apparent, to a legal certainty, . . . that the plaintiff never was entitled to recover a sum equal to, or in excess of, the jurisdictional minimum." Id. (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)) (internal quotations omitted). The First Circuit has construed the meaning of "good faith" to mean that jurisdiction is defeated "if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount." Equilin Mendoza v. Don King Productions, Inc., 638 F.3d 1, 4 (1st Cir. 2011); Jiménez Puig v. Avis Rent-A-Car System, 574 F.2d 37, 40 (1st Cir. 1978) ("The question, however, is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth [the threshold amount].")

In the amended complaint, Plaintiff seeks to recover $500,000 for "the impairment of his reputation and standing in the community, personal humiliation, and mental anguish and

suffering" as a result of James River's allegedly defamatory statements. ECF No. 26 at 12 in Case No. 22-1186. Plaintiff also seeks punitive damages and contends that "the total damages suffered by [Plaintiff] . . . are reasonably estimated at a sum in excess of ONE MILLION DOLLARS ($1,000,000.000)." ECF No. 26 at 13 in Case No. 22-1186. James River argues that Plaintiff has not made "any actual and plausible pleadings that describe the extent of his claimed injuries, much less show that his claim exceeds the $75,000.000 required for diversity jurisdiction." ECF No. 30 at 27 in Case No. 22-1186.

However, Plaintiff alleges that James River's statements to the Commissioner of Insurance constitute libel *per se*. Under Puerto Rico law, a statement is considered libelous *per se* "when it imputes the commission of an offense" or "when it tends to discredit, scorn, or dishonor or expose a person to the public hatred or scorn, or to deprive him of the public confidence or social intercourse, or to injure him in his business." Bosch v. Editorial El Imparcial, 87 D.P.R. 285, 313, 1963 PR Sup. LEXIS 249 (P.R. 1963). Accordingly, while in a claim for libel a Plaintiff must generally show real damages, "a publication imputing the commission of an offense is considered libelous per se and, therefore, no allegation or special proof of damages is required." Id. at 300. Indeed, "[w]here the defendant has made statements libelous *per se*, plaintiff need present no proof of reputational damage more than that defendant *published* the libelous writing to another." Gierbolini Rosa, 930 F. Supp. at 716–17 (emphasis added). This is because "(1) the nature of a statement held libelous *per se* creates a strong likelihood that the plaintiff actually suffered reputational injury, (2) the court would otherwise suffer itself to the oftentimes unseemly evidence that plaintiff had no reputation to damage, and (3) the difficulty of showing and valuing reputational damage proved unreasonably burdensome for plaintiffs and uncomfortably speculative for the courts." Therefore, the issue of damages

turns on whether James River published the allegedly libelous statements to the Commissioner of Insurance.

Under Puerto Rico Law, publication is also an essential element in claims for both libel and slander. Mulero v. Casanova, 58 P.R.R. 322, 324, 1941 PR Sup. LEXIS 256 (P.R. 1941). A lawsuit for libel, as in a lawsuit for tort, requires as an essential element a negligent act or omission. Ortiz Algarin v. Fed. Express Corp., 56 F. Supp. 2d 172, 174 (D.P.R. 1999). In the case of libel, "the negligent act is the publication of a false or defamatory statement." Id. The Puerto Rico Libel and Slander Act explains that publication has occurred when "the accused knowingly parted with the immediate custody of the libel or exposed the same to view under circumstances which allowed it to be *read by any other person*." 26 L.P.R.A. § 3148 (emphasis added). In this case, Plaintiff alleges, and James River does not dispute that it twice sent the letter to the Puerto Rico Commissioner of Insurance, thereby exposing the allegedly defamatory statements contained therein to be read by another person. James River nevertheless contends that his allegations communicated to the Insurance Commissioner were not false. ECF No. 30 at 16–19 in Case No. 22-1186. However, as already explained above, Plaintiff alleges, and the court is obliged to give Plaintiff's allegations all reasonable inferences, that the accusation that he was seeking recovery for pre-existing conditions was in fact false. As such, Plaintiff has adequately set forth factual allegations that raises his claim above the level of speculation that James River published false information to the Commissioner of Insurance.

Additionally, unlike Plaintiff's unfounded allegation that James River's use of the word "extort" in an email amounted to libel per se, with regard to the letters published to the Puerto Rico Commissioner of Insurance, James River's accusation makes reference to a specific criminal statute—Article 27.180 of the Insurance Code. As such, James River can make no

argument here that its words were hyperbolic or merely the expression of an opinion. In the two letters sent to the Puerto Rico Insurance Commissioner, James River explicitly wrote that it had a "well-founded reason to believe that the [Plaintiff] violated Art. 27.180 of the Insurance Code of Puerto Rico by requesting compensation for damages that were pre-existing or degenerative or caused as a result of the treatment of the other conditions suffered by the [Plaintiff] prior to the motor vehicle accident." ECF No. 30-2 at 1–2, 7–8 in Case No. 22-1186. As such, Plaintiff has adequately alleged that James River (1) published a letter (2) containing false information, (3) which accused Plaintiff of an offense. Plaintiff's allegations therefore properly charge James River of having committed libel *per se*, and plaintiff need not specifically allege reputational or special damages.

It is not out of the realm of possibilities that Plaintiff's recovery may exceed the $75,000 threshold, and it is not apparent from the face of the pleadings that it is a *legal certainty* that Plaintiff will never be entitled to recover at least $75,000 or that Plaintiff is requesting above that threshold amount in bad faith. As such, James River's request to dismiss Plaintiff's claim for lack of subject matter jurisdiction is denied.

### D.  James River's Rule 44.1(d) Request

Finally, in its motion to dismiss, James River requests that the court sanction Plaintiff and impose attorney's fees and costs upon Plaintiff for filing the amended complaint in the instant 2022 lawsuit. ECF No. 30 at 31 in Case No. 22-1186. "Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law, in this case Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir. 2010); Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994) ("In a diversity case in which the substantive law of Puerto Rico supplies the

basis of decision, a federal court must give effect to Rule 44.1(d) . . . of the Puerto Rico Rules of Civil Procedure.").

Rule 44.1(d) provides that "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." 32 L.P.R.A., App. III, § 44.1(d). Rule 44.1(d) seeks "to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Feliciano Rivera v. Pina Nieves, 292 F. Supp. 3d 560, 567 (D.P.R. 2018) (citing Top Entm't Inc. v. Torrejon, 351 F.3d 531 (1st Cir. 2003)). Therefore, to find obstinacy the court must find that "a litigant has been 'unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay.'" Flovac, Inc. v. Airvac, Inc., 2017 WL 1194203, at *1 (D.P.R. Mar. 30, 2017) (quoting De León v. Corporación Insular de Seguros, 931 F.2d 116, 127 (1st Cir. 1991)). "The offending party's conduct, at the very least, must have started "a litigation that could have been avoided," unnecessarily delayed the proceedings, or forced the other party to "embark on needless procedures." Id. (citing Fernández v. San Juan Cement Co., 18 P.R. Offic. Trans 823, 830 (P.R. 1987)).

However, the imposition of attorney's fees due to obstinate behavior by one of the parties or their attorney is proper only upon the entry of judgment. See Vernet v. Serrano Torres, 2011 WL 13286701, at *8 (D.P.R. Mar. 17, 2011) (denying a plaintiff's request for attorney's fees pursuant to Rule 44.1(d) in its response to a motion for summary judgment as premature as "this rule is inapplicable at this juncture as no judgment has yet been entered."); Alejandro-Ortiz v.

<u>Puerto Rico Elec. Power Auth.</u>, 872 F. Supp. 2d 133, 139 (D.P.R. 2012) (explaining that a plaintiff's request for sanctions pursuant to Rule 44.1(d) was not applicable because no judgment had been entered); <u>Rivera v. LifeLink Foundation, Inc.</u>, 255 F. Supp. 3d 327, 331 (D.P.R. 2017) (explaining that Rule 44.1(d) "requires a district court to hold a losing party who has been obstinate during the course of a lawsuit liable for its adversary's attorney's fees."). Because judgment has not been entered in this case James River's request for attorney's fees under Rule 44.1(d) is premature. Furthermore, because the court herein concludes that Plaintiff's first two causes of action survive James River's motion to dismiss, James River's request for sanctions and attorney's fees is denied without prejudice.

### IV.   CONCLUSION

For the foregoing reasons, James River's motion to dismiss the instant amended complaint is GRANTED IN PART and DENIED IN PART. James River's request to dismiss with prejudice Plaintiff's first and second causes of action for allegedly defamatory statements made to the Puerto Rico Insurance Commissioner is DENIED. James River's request for sanctions against Plaintiff and requesting costs and attorney's fees is DENIED WITHOUT PREJUDICE. However, James River's request to dismiss Plaintiff's third cause of action for the alleged defamatory statement made in an email during settlement negotiations is GRANTED and Plaintiff's third cause of action is accordingly DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2022.

s/Marcos E. López
U.S. Magistrate Judge
